# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| CARL LEWIS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>LAFAYETTE FEDERAL CREDIT UNION,<br><br>                    Defendant. | Case No. 8:25-cv-01006-DLB |
| RICARDO AVILES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>LAFAYETTE FEDERAL CREDIT UNION,<br><br>                    Defendant. | Case No. 8:25-CV-01035-DLB |
| JOSEPH MAUSTELLER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>LAFAYETTE FEDERAL CREDIT UNION,<br><br>                    Defendant. | Case No. 8:25-cv-01039-DLB |

| | |
|---|---|
| ANDY WANG, individually and on behalf of all others similarly situated, | Case No. 8:25-cv-01050-DLB |
| Plaintiff, | |
| v. | |
| LAFAYETTE FEDERAL CREDIT UNION, | |
| Defendant. | |
| SEBHIA M. DIBRA, individually and on behalf of all others similarly situated, | Case No. 8:25-CV-01054-DLB |
| Plaintiff, | |
| v. | |
| LAFAYETTE FEDERAL CREDIT UNION, | |
| Defendant. | |

## PLAINTIFFS' JOINT MOTION TO CONSOLIDATE ACTIONS, APPOINT INTERIM CLASS COUNSEL, AND SET SCHEDULING DEADLINES UNDER F.R.C.P. 23(g)(3) & 42(a) AND MEMORANDUM IN SUPPORT THEREOF

Plaintiffs Carl Lewis, Kristine Darbinyan, Ricardo Aviles, Joseph Mausteller, Andy Wang and Sebhia M. Dibra (collectively "Plaintiffs") individually, and on behalf of all others similarly situated, respectfully request the Court: (1) pursuant to Fed. R. Civ. P. 23(g)(3) and 42(a), consolidate the above-captioned cases, as well as any other future actions filed in or transferred to this Court against Defendant Lafayette Credit Union ("Defendant" or "Lafayette") in connection with or related to the Lafayette Data Breach (defined below) that occurred in September 2024; (2) appoint Mona Amini of Kazerouni Law Group, APC, Andrew J. Shamis of Shamis & Gentile, P.A. ("Shamis & Gentile"), Manuel S. Hiraldo of Hiraldo P.A., Nicholas

Migliaccio of Migliaccio & Rathod, LLP, and Andrea R. Gold of Tycko & Zavareei LLP to Plaintiffs' Executive Committee; (3) appoint Mariya Weekes of Milberg Coleman Bryson Phillips Grossman PLLC as Chair of Plaintiffs' Executive Committee (collectively "Proposed Interim Class Counsel); (3) stay all pleading and other deadlines in the Related Actions (defined below); (4) require the filing of a consolidated class action complaint ("CC") within 30 days of entry of an order consolidating the cases and appointing leadership; and (5) set the deadline for Defendant's response to the CC as 45 days after the CC is filed, and in the event the Defendant's response is a motion to dismiss, set the deadline for 30 days thereafter for Plaintiffs' response thereto, followed by 21 days thereafter for the Defendant's reply.

## I.    INTRODUCTION

Plaintiffs seek to hold Lafayette liable for its unlawful disclosure of the highly sensitive personal identifiable information ("PII" or "Private Information") of current and former customers in a large and preventable data breach that occurred on or about September 16, 2024 ("Data Breach"). As a result of Lafayette's failure to keep Plaintiffs' and Class members' Private Information secure and confidential, five class action lawsuits were filed in the United States District Court of Maryland, one action was filed in the Central District of California, and one action was filed in the Circuit Court for Montgomery County, Maryland: *Lewis v. Lafayette Federal Credit Union.*, No. 8:25-cv-01006 ("*Lewis*"), *Darbinyan v. Lafayette Federal Credit Union,* No. 2:24-cv-02927-SB-RAO (C.D. Cal.) ("*Darbinyan*")[1], *Aviles v. Lafayette Federal Credit Union,* No. 8:25-cv-01035 (D. Md.) ("*Aviles*"), *Mausteller v. Lafayette Federal Credit Union,* No. 8:25-cv-01039 (D. Md.) ("*Mausteller*"), *Wang v. Lafayette Federal Credit Union,* No. 8:25-cv-01050 (D. Md.) ("*Wang*"), *Dibra v. Lafayette Federal Credit Union,* No. 8:25-cv-01054 (D. Md.)

---

[1] The *Darbinyan* action was voluntarily dismissed on May 12, 2025.

("*Dibra*"), and *Richards v. Lafayette Federal Credit Union*, No. C-15-CV-25-001492 (Cir. Ct. Md.)[2] (the "Related Actions"). The Related Actions allege common issues of law and fact and seek relief on behalf of overlapping classes. Accordingly, to preserve party and judicial resources and prevent duplication of effort and the risk of inconsistent rulings, these actions are appropriate for consolidation.

Prior to the filing of this Motion, counsel for Plaintiffs conferred with counsel for Lafayette who indicated Lafayette does not oppose consolidation and takes no position on Plaintiffs' request to appoint Interim Class Counsel. Should the Court Order the cases be consolidated, Plaintiffs will file a CC.

## I.    FACTUAL AND PROCEDUREAL BACKGROUND.

Defendant's data security failures allowed a targeted cyberattack to compromise Defendant's network that, upon information and belief, contained the Private Information of Plaintiffs and other individuals ("the Class"). The Data Breach occurred on September 16, 2024, and Defendant began sending notification letters advising Plaintiffs and the Class on March 20, 2025.[3]

### A.    Procedural History

In the weeks following the Data Breach, six class action lawsuits were filed in United States District Courts against Lafayette, each seeking to redress the harm caused by the Data Breach. Five class action lawsuits were filed in the United States District Court of Maryland and one action was filed in the Central District of California: (1) *Lewis v. Lafayette Federal Credit Union.*, No. 8:25-cv-01006 ("*Lewis*"), (2) *Darbinyan v. Lafayette Federal Credit Union,* No. 2:24-cv-02927-

---

[2] Dismissal of the *Richards* action is forthcoming.
[3] A sample copy can be viewed at https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/6c038d1f-41db-4c57-9bdd-c1c7215b7eba.html.

SB-RAO (C.D. Cal.) ("*Darbinyan*"), (3) *Aviles v. Lafayette Federal Credit Union,* No. 8:25-cv-01035 (D. Md.) ("*Aviles*"), (4) *Mausteller v. Lafayette Federal Credit Union,* No. 8:25-cv-01039 (D. Md.) ("*Mausteller*"), (5) *Wang v. Lafayette Federal Credit Union,* No. 8:25-cv-01050 (D. Md.) ("*Wang*"), and (6) *Dibra v. Lafayette Federal Credit Union,* No. 8:25-cv-01054 (D. Md.) ("*Dibra*"). The Related Actions focus on the same factual predicate—the Data Breach—and assert nearly identical claims for relief.

## II.    THE ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT.

The actions before this Court are nearly identical and consolidation is appropriate. Each lawsuit arises from the same common set of operative facts—the Data Breach. Due to each Plaintiffs' reliance on the same set of operative facts, Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The above-captioned cases, the parties thereto, and the Court will be best served in a consolidated proceeding.

### A.    Legal Standard

Federal Rule of Civil Procedure 42(a) reads:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

Courts enjoy broad discretion to order consolidation under Rule 42(a). *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.,* 559 F.2d 928, 933 (4th Cir. 1977*).* Consolidation is often warranted where multiple…class actions are based on the same public statements and reports. *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000).

Consolidation of similar class actions expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and

minimizes the expenditure of time and money for all parties involved. *L.G. v. Brock,* No. 4:18-cv-01486-DCC, 2019 U.S. Dist. LEXIS 176012, *7 (D.S.C. Oct. 10, 2019*) (finding that consolidation will save valuable resources as the Court will be tasked with adjudicating common legal issues only once. Without consolidation, the Court and the parties will be forced to expend additional resources conducting separate hearings and managing separate scheduling order deadlines); *see also Dittus v. KEG, Inc.,* No. 3:14-cv-00300-JFA, 2014 U.S. Dist. LEXIS 166116, *8 (D.S.C. Dec. 1, 2014) ("The court finds that because the actions involve common questions of law and fact, consolidation will promote judicial economy, result in efficiencies for the parties in the conducting of discovery, and should not overly prejudice any party.").

### B.     Argument and Authorities

#### 1.   *Consolidation is Appropriate Under Rule 42(a)*

Where two or more actions against the same defendant share key factual and legal questions—including, as here, where the actions arise from the same data breach—consolidation under Rule 42(a) is warranted. *Lewis v. Prince George's Cty. Bd. of Educ*., No. GJH-21-2720, 2022 U.S. Dist. LEXIS 179565, *16 (D. Md. Sep. 29, 2022).

The Complaints in each of the Related Cases assert common causes of action against a common defendant and seek the same relief in response to the same event: the Data Breach. The Related Cases commonly seek certification of similar and overlapping classes and allege that class members suffered harm as a result of the Data Breach because their PII was exposed and/or exfiltrated by unauthorized third parties. Consolidating the Related Cases, and any later filed or removed cases, will streamline and organize this litigation, allowing the Court to efficiently resolve the nearly identical legal and factual issues. *See Fitzwater v. Consol Energy, Inc.,* Civil Action No. 2:16-cv-09849, 2017 U.S. Dist. LEXIS 210946, *5 (S.D. W. Va. Dec. 22, 2017)

6

(finding that consolidation serves the interests of judicial economy when there is a substantial overlap between cases).

Courts consistently find that data breach class actions are particularly appropriate for Rule 42 consolidation. *See, e.g.*, *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc*., No. 17-cv-1102-WJM-STV, 2017 U.S. Dist. LEXIS 142626, at *3 (D. Colo. Sep. 1, 2017) ("[B]oth actions are substantively identical and are in the same stage of litigation . . . arise out of the same occurrence: a data breach . . . ."); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 745 (W.D.N.Y. 2017) (noting court had previously "issued an order consolidating . . . pursuant to Federal Rule of Civil Procedure 42(a)(2), and transferred the case" to one judge in large data breach litigation).

Consolidation of the Related Cases is warranted because it will maximize judicial economy by simplifying discovery, pretrial motions, class certification issues, and other case management issues, especially as all of the cases are at their procedural inception. Consolidating the Related Cases will also reduce the confusion and delay that may result from prosecuting related putative class actions separately, including eliminating duplicative discovery and the possibility of inconsistent rulings on class certification, *Daubert* motions, and other pretrial matters. Furthermore, consolidation will not cause any prejudice, inconvenience, or delay or impose additional expenses on the parties. Rather, early consolidation will optimize efficacy for the Court and the parties because the Related Cases are substantially identical, assert substantially overlapping factual allegations, involve substantially similar substantive theories of relief, and are in a similar procedural posture. No responsive pleadings have been filed in any of the Related Cases and no scheduling or case management orders have yet been entered in any of the Related

Cases. Bypassing consolidation of the Related Cases at this junction would result in them proceeding at different schedules and would be needlessly duplicative, confusing, and inefficient.

Because consolidation here serves the interest and convenience of the parties and Court through its promotion of judicial economy and efficiency, and it will not prejudice any party to the Related Cases, Plaintiffs request that the Court consolidate the Related Cases under the docket number of the *Lewis* case, No. 8:25-cv-01006, and under the caption *In re Lafayette Federal Credit Union Data Breach Litigation*.

## III. PROPOSED INTERIM CLASS COUNSEL MEET THE REQUIREMENTS OF RULE 23(G)

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

Fed. R. Civ. P. 23(g) lists four factors that courts should consider when selecting class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the class action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(l)(B). Here, each of the Rule 23(g) factors supports appointing the Proposed Interim Co-Lead Counsel.

## IV.   APPOINTMENT OF PROPOSED INTERIM CLASS COUNSEL IS APPROPRIATE

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under FRCP 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case management and complex litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion.

Proposed Interim Class Counsels', experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

### A.   Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things: (1) investigating the facts surrounding

the data breach; (2) interviewing numerous consumers injured by the data breach; (3) researching legal claims; (4) drafting initial pleadings; (5) investigating and retaining experts in the area of data security and damages; and, (6) organizing Plaintiffs and counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The facts alleged by Plaintiffs in the above styled actions are egregious in terms of the impact to individual patients and the consumer marketplace as a whole. Given the scope of the Data Breach and the number of victims potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationships, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under FRCP 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg*. Co., No. 5:18-cv-00198-EJD, 2018 WL

3388548, at *2 (N.D. Cal. Apr. 27, 218) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

> **B.**    **Proposed Interim Class Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.**

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g., In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). Proposed Interim Class Counsel possess the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g., In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each has substantial experience, resources, and knowledge that will benefit the putative class as this litigation proceeds.

***Mariya Weekes of Milberg, Coleman, Bryson, Phillips, Grossman, PLLC***

Mariya Weekes is a partner at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has

repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[4] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[5] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.  Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal. Since leaving the bench, she now represents individuals and other entities in class action litigation in both state and federal courts.

After stepping down from the bench, Ms. Weekes joined Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.,*

---

[4] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[5] *See* https://milberg.com/precedent-setting-decisions/page/3/.

*In Re: Hot Topic Data Breach Litigation*, No. 2:24-cv-9215-MEMF-AS (C.D. Cal.) (Ms. Weekes appointed co-lead counsel in a consolidated action involving more than 57 million customers); *In Re: LoanCare Data Security Breach Litig.*, No. 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.3 million consumers); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation.*, No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc.*, No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers);  *Morrison et al. v. Family Dollar Stores, LLC, et al*., 0:24-cv-60294-AHS (S.D.Fl.) (Ms. Weekes was appointed as co-lead counsel in a consolidated consumer protection class action involving adulterated mediations impacting thousands of consumers across 19 States); *W. v. LivaNova USA, Inc.,* Case No. 4:24-cv-02250 (S.D. Tex.) (appointed Interim Co-Lead Counsel); *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-1784-MSS-AEP (M.D. Fla.) (appointed joint Interim Class Counsel); *In re TRC Staffing Services, Inc. Data Breach Litig.*, Case No. 1:24-cv-02398-VMC (N.D. Ga.) (appointed co-lead counsel); *Owens et al v. MGM Resorts International, et al.,* Case No. 2:23-cv-01480-RFB-MDC (D. Nev.) (appointed to Plaintiffs' Steering Committee); *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[6]

---

[6] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

***Mona Amini of Kazerouni Law Group, APC***

Mona Amini is a partner at Kazerouni Law Group, APC, based in Costa Mesa, California, specializing in consumer law, class actions, and other complex litigation. Ms. Amini and Kazerouni Law Group's professional experience as class counsel in consumer protection and data breach cases, in particular, makes Ms. Amini an excellent candidate for the Interim Co-Lead Counsel position in this litigation. *See* MCL, § 10.221 at pp. 24-25. Beyond its commitment to excellence, Kazerouni Law Group, APC, also values diversity and inclusion, and Ms. Amini's appointment as Interim Co-Lead Counsel will contribute to the diversity of the leadership team. Ms. Amini possesses (1) a willingness and ability to commit to the time-consuming nature of this case; (2) a history of working cooperatively and respectfully with others in data breach litigation; and (3) familiarity with data breach class actions and the California Consumer Privacy Act ("CCPA"), California Civil Code §§ 1798.100, *et seq.*, which will be included as a claim on behalf of California plaintiffs and class members in this consolidation litigation.

Ms. Amini and Kazerouni Law Group, APC have been appointed as class counsel in numerous consumer class actions and data breach class actions specifically, including but not limited to the following:  *Santana, et al. v. Rady Children's Hospital – San Diego*, Case No. 37-2014-0002241 (Super. Ct. Cal. Feb. 8, 2019) (California Confidentiality of Medical Information Act ("CMIA") class action that settlement shortly before trial, which resulted in a settlement valued at over $13.5 million for 14,200 class members); *R.O., et al. v. Rady Children's Hospital – San Diego*, No. 37-2020-00011841-CU-BT-CTL (Super. Ct. Cal.) (CMIA class action settlement granted final approval on December 10, 2021); *Newman v. JM Bullion, Inc*., No. BCV-21-100436-BCB (Super. Ct. Cal.); *Kolar v. CSI Financial Services, LLC*, No. 37-2021-00030426-CU-NP-CTL (Super. Ct. Cal. Jan. 20, 2023); *Stoffers v. Dave, Inc.*, No. 20STCV35381 (Super. Ct. Cal.);

*In re Planned Parenthood Los Angeles Data Incident Litigation*, Case No. 21-CV-44106 (Super. Ct. Cal.); *Hellyer, et al.  v. Smile Brands Inc., et al*, No. 8:21-v-01886-SOC-ADS (C.D. Cal.); *In re loanDepot Data Breach Litigation*, Case No. 8:24-cv-00136-DOC-JDEx (C.D. Cal.); *In re Entertainment Partners Data Breach Litigation*, Lead Case No.: 2:23-cv-065460CAS-PVC (C.D. Cal.) (Ms. Amini appointed to Plaintiff's Steering Committee); *Nulf v. Alvaria, Inc., et al.*, Case No. 1:23-cv-10999 (D. Mass.) (Ms. Amini appointed as Plaintiffs' Liaison Counsel and Interim Class Counsel); and *McCartney, et al. v. Ventura County Credit Union*, No. 2023CUPP011569 (Super. Ct. Cal.) (Ms. Amini appointed to Plaintiffs' Executive Committee).

In these matters that Ms. Amini and Kazerouni Law Group, APC have been appointed as class counsel, she has demonstrated leadership and personal commitment to be directly involved in the litigation, including drafting pleadings and briefs, taking and defending depositions, working with experts, facilitating filings and staying apprised of pleadings, coordinating discovery and pretrial matters, participating in motion practice, mediation and negotiating settlement terms and settlement agreements, and working respectfully and cooperatively with plaintiffs' and defendants' counsel, as Ms. Amini and her firm will similarly do in this case if appointed to the Plaintiffs' Executive Committee in the consolidated litigation.

### Andrew Shamis of Shamis & Gentile, P.A.

Andrew Shamis is the managing partner at Shamis & Gentile, P.A. where he heads the class action and mass torts division of the firm. Mr. Shamis and his extensive experience in civil litigation has helped him recover over 1 billion dollars for consumers and plaintiffs throughout the country through his relentlessness, expertise, and calculated approach. Mr. Shamis is routinely certified class counsel which has resulted in many favorable class settlements.

In connection with litigating class cases throughout the country, Mr. Shamis has made it

a point to become a permanent member of many bars to effectively represent those communities. Mr. Shamis is permanently admitted to practice law in the states of Arizona, Florida, Georgia, Illinois, Missouri New York, Ohio, Texas, and Washington, as well as the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida, Northern, Eastern, Western, and Southern Districts of New York, Northern and Southern District of Illinois, Northern, Middle, and Southern District of Georgia, Eastern and Western Districts of Michigan, Eastern and Western Districts of Wisconsin, Northern and Southern Districts of Ohio, Southern District of Indiana, Eastern and Western Districts of Missouri, Eastern and Western Districts of Oklahoma, Northern, Western, Eastern, and Southern Districts of Texas, Eastern and Middle Districts of Tennessee, US District Court if Colorado, US District Court for Arizona, and the US District Court of Nebraska. Some of Mr. Shamis' successes include the following:

- *South, et. al. v. Progressive Select Insurance Company, et. al.*, No. 19-cv-21760 (S.D. Fla. 2023) ($48,800,000.00 Class Settlement)

- *Davis, et. al. v. Geico Casualty Company, et. al.*, No. 19-cv-02477 (S.D. Ohio 2023) ($5,756,500.00 Class Settlement)

- *Arevalo, et. al. v. USAA Casualty Insurance Company, et. al.*, No. 2020CI16240 (Bexar County, Texas 2023) ($4,089,287.50 Class Settlement)

- *Albrecht v. Oasis Power, LLC*, No. 1:18-cv-1061 (N.D. Ill. 2018) ($7,000,000.00 Class Settlement)

- *Bloom v. Jenny Craig, Inc.*, No. 1:18-cv-21820-KMM, 2018 U.S. Dist. LEXIS 51686 (S.D. Fla. 2018) ($3,000,000 Class Settlement)

- *Cortazar v. CA Management Services Parent, LLC*, No. 19-cv-22075 (S.D. Fla.2019) ($1,500,000.00 Class Settlement)

- *DeFranks v. Nastygal.com USA Inc.*, No. 19-cv-23028-DPG (S.D. Fla. 2019) ($4,025,000 Class Settlement)

- *Deleon III, et. al. v. Direct General Insurance Company, et. al.*, No. 19-CA-001636 (9th Judicial Circuit, Osceola County) ($2,450,000 Class Settlement)

- *Dipuglia v. US Coachways, Inc.*, No. 17-23006-Civ, 2018 U.S. Dist. LEXIS 72551 (S.D. Fla. 2018) ($2,600,000 Class Settlement)

- *Eisenband v. Schumacher Automotive, Inc.*, No. 18-cv-01061 (S.D. Fla 2018) ($5,000,000 Class Settlement)

- *Flores v. Village Ford, Inc.*, No. 2:19-CV-12368 (E.D. Mich. 2019) ($1,050,000 Class Settlement)

- *Gottlieb v. Citgo Corporation*, No. 16-cv-81911 (S.D. Fla. 2016) ($8,300,000 Class Settlement)

- *Halperin v. YouFit Health Clubs, LLC*, No. 18-CV-61722-WPD (S.D. Fla. 2018) ($1,418,635 Class Settlement)

- *Hindes v. Ohio Mutual Insurance Company*, No. 20CV007627 (Franklin County, OH) ($1,875,000 Class Settlement)

- *Jacques, et. al. v. Security National Insurance Company*, No. CACE-19-002236 (17th Judicial Circuit, Broward County) ($6,000,000 Class Settlement)

- *Jones v. Washington State Employee's Credit Union*, No. 20-2-06596-5 (Superior Court of the State of Washington County of Pierce) ($2,400,000 Class Settlement)

- *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW, 2018 U.S. Dist. LEXIS 122098 (S.D. Fla. 2018) ($1,236,300 Class Settlement)

- *McGowan v. First Acceptance Insurance Company, Inc.*, No. 21-CA-004864 (Fla. 9th Cir. Ct.) ($2,200,000 Class Settlement)

- *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147 (S.D. Ohio 2020) ($12,000,000 Class Settlement)

- *Papa v. Greico Ford Fort Lauderdale, LLC*, No. 1:18-cv-21897 (S.D. Fla. 2018) ($4,800,000 Class Settlement)

- *Patterson v. McCarthy Ford, Inc.*, No. 2020-CH-07042 (Circuit Court of Cook County, Illinois County Department, Chancery Division) ($1,870,000 Class Settlement)

- *Pena v. John C. Heath, Attorney at Law, PLLC*, d/b/a Lexington Law Firm, No.18-cv-24407-UU (S.D. Fla. 2018) ($11,450,863 Class Settlement)

- *Petit Beau, et. al., v. Ocean Harbor Casualty Insurance Company*, No. CACE-18-029268 (17th Judicial Circuit, Broward County) ($4,500,000 Class Settlement)

- *Picton v. Greenway Chrysler-Jeep-Dodge Inc. d/b/a Greenway Dodge Chrysler Jeep*, No. 19-cv-00196-GAP-DCI (M.D. Fla. 2019) ($2,745,000 Class Settlement)

- *Wijesinha v. Susan B. Anthony List, Inc.*, No. 18-cv-22880 (S.D. Fla. 2018) ($1,017,430 Class Settlement)

### Manuel S. Hiraldo of Hiraldo P.A.

Manuel S. Hiraldo of Hiraldo P.A. Manuel Hiraldo began his legal career in 2006 after graduating from Emory University School of Law. For the next five years, Mr. Hiraldo practiced as an associate at two regional law firms in South Florida where he defended corporations in a variety of matters, including construction, personal injury, and commercial disputes. From 2011 to 2016, Mr. Hiraldo practiced with the law firm of Blank Rome LLP, first as an associate, and then as Of Counsel from 2015 through the end of 2016. While at Blank Rome, Mr. Hiraldo represented national lenders and mortgage servicers in consumer protection lawsuits under the Telephone Consumer Protection Act, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and state collection and deceptive trade practices statutes. During this time, Mr. Hiraldo was lead counsel in over 78 appellate matters. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Patino*, 192 So. 3d 637 (Fla. 5th DCA 2016); *Hatchett v. Homecomings Fin.*, 189 So. 3d 786 (Fla. 4th DCA 2016); *Deutsche Bank Trust v. Mannino*, 185 So. 3d 1253 (Fla. 5th DCA 2016); *IndyMac Fed. Sav. Bank, FSB v. Nabozny*, 185 So. 3d 664 (Fla. 2d DCA 2016); *Figueredo v. Deutsche Bank Nat'l Trust Co.*, 181 So. 3d 496 (Fla. 3d DCA 2015); *Curro v. Onewest Bank, FSB*, 175 So. 3d 300 (Fla. 4th DCA 2015); *Morilla v. Wells Fargo Bank, N.A.*, 173 So. 3d 900 (Fla. 3d DCA 2015); *Keeble v. Citibank, N.A.*, 162 So. 3d 1035 (Fla. 5th DCA 2015); *Harris v. Deutsche Bank Nat'l Trust Co.*, 160 So. 3d 448 (Fla. 4th DCA 2015).

In 2016, Mr. Hiraldo founded Hiraldo P.A. and has since represented consumers in a variety of class action matters under federal and state consumer protection statutes. Mr. Hiraldo has

litigated over 800 federal cases and is presently acting as lead counsel or co-counsel in over 50 putative class matters. Additionally, Mr. Hiraldo was selected as a Florida Rising Star by Super Lawyers from 2012 through 2016, and a Super Lawyer from 2021 through 2024. Since founding the firm, Mr. Hiraldo has recovered millions of dollars for consumers and has been appointed class counsel in over 45 class action matters, including several data breach actions. *See, e.g.*, *Bloom v. Jenny Craig, Inc.*, No. 1:18-cv-21820-KMM (S.D. Fla. 2018); *Jairam v. Colourpop Cosmetics, LLC*, No. 1:19-cv-62438-RAR (S.D. Fla. 2019); *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 6:19-cv-00196-GAP (M.D. Fla. 2019); *Dipuglia v. US Coachways, Inc.*, 2018 U.S. Dist. LEXIS 72551 (S.D. Fla. 2018); *Banks v. Fuccillo Aff. of Fl., Inc.*, Case No. 2:19-cv-00227-JES-MRM (M.D. Fla. 2019); *Patterson v. McCarthy Ford, Inc.*, No. 2020-CH-07042 (Cir. Ct. Ill.); *Jackson v. South Houston Motorcars, LLC*, No. 4:20-cv-01955 (S.D. Tex. 2020); *Mohamed v. Off Lease Only, Inc.*, No. 1:15-cv-23352-MGC (S.D. Fla. 2015); *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2018).

### Nicholas Migliaccio of Migliaccio & Rathod, LLP

Nicholas Migliaccio is a partner at Migliaccio & Rathod LLP and has substantial experience serving as lead counsel alongside other firms as well, including in consolidated and multi-district litigation. Mr. Migliaccio is qualified, experienced, and capable of prosecuting the instant litigation and has an extensive and robust array of experience prosecuting a number of noteworthy data privacy, consumer protection, civil rights, environmental contamination, and wage theft cases. The firm's attorneys focus primarily on class actions and have been appointed class counsel in a wide array of class action cases, including those implicating complex, technical analysis. For example, in *In re: Valsartan N-Nitrosodimethylamine (Ndma) Products Liability Litigation*, 1:19md2875 (D.N.J.), the court entered a landmark medical monitoring class

certification order following years of intense discovery and appointed Mr. Migliaccio as one of just two attorneys to lead the prosecution of the class composed of individuals across the country placed at an increased risk of cancer due to their ingestion of drugs tainted with carcinogens.

M&R is particularly experienced in data breach and privacy class actions. The firm has been appointed or has served in a leadership capacity in numerous data breach and privacy class actions. *See*, *e.g.*, *In Re Mapfre Data Disclosure Litigation,* No. 1:23-cv-12509 (D. Mass.) (interim co-lead counsel); *In Re LastPass Data Security Incident Litigation*, Case No. 1:22-cv-12047-PBS (D. Mass) (interim co-lead counsel); *Bickham et al. v. Reprosource Fertility Diagnostics, Inc*., 1:21-CV-11879-GAO (D. Mass.) (serving as de facto interim co-lead counsel); *In re Practice Resources, LLC Data Security Breach Litigation*, Case No. 22-CV-0890 (N.D.N.Y.) (interim co-lead counsel), *In Re Netgain Technology, LLC, Consumer Data Breach Litigation*, Case No. 21-cv-1210 (SRN/LIB) (D. Minn.) (executive committee member), *In re Eskenazi Health Data Incident Litigation*, No. 49D01-2111-PL-038870 (Ind. Sup. Ct.) (executive committee member), and *In Re Rutter's Inc. Data Security Breach Litigation*, Case No. 1:20-cv-382 (M.D. Pa.) (executive committee member).  They have led, or helped lead, the prosecution of cases resulting in nationwide settlements providing substantial monetary and non-monetary relief to the victims of data breaches. *See*, *e.g.*, *McHenry v. Advent Health Partners, Inc*., Case No. 3:22-cv-00287 (M.D. Tenn.) (nationwide settlement in which M&R was class counsel along with one other firm); *Carmack v. Snap-On, Inc*., Case No. 2:22-cv-00695-WED (W.D. Wisc.) (nationwide settlement in which M&R was sole class counsel).

### Andrea R. Gold of Tycko & Zavareei LLP

Andrea R. Gold is the Managing Partner of Tycko & Zavareei LLP. Ms. Gold is a graduate of University of Michigan Law School (J.D., 2004) and University of Michigan Business School

(B.B.A., 2001). She has been in private practice at Tycko & Zavareei since 2006, and the great majority of her practice has involved litigation on behalf of consumers, representing individuals and classes injured by predatory banking practices, unlawful insurance practices, violations of the Telephone Consumer Protection Act, data breaches, and other unfair and deceptive business practices. Over the past nearly nineteen years, she has gained substantial experience handling complex civil litigation and class action litigation. With co-counsel, she has taken two cases to trial, including jury trials that have lasted several months.

Ms. Gold has been named Class Counsel or Settlement Class Counsel in class actions including *Tabak v. Apple Inc.*, No. 4:19-cv-02455-JST (N.D. Cal.); *Jacobs v. FirstMerit Corporation, et. al.*, No. 11 CV000090 (Ct. Common Pleas, Lake County, Ohio); *Maria Vergara v. Uber Technologies, Inc.*, No. 1:15-CV-06942 (N.D. Ill.); *Szafarz v. United Parcel Service, Inc.*, No. SUCV2016-2094-BLS2 (Superior Court, Commonwealth of Massachusetts); *Lloyd, et al. v. Navy Federal Credit Union*, Case No. 3:17-cv-01280 (S.D. Cal.); *Harris v. Farmers Insurance*, No. BC579498 (Super. Ct. State of CA); *Lambert v. Navy Fed. Credit Union*, No. 19-cv-00103-LO-MSN (E.D. Va.); *Smith v. Fifth Third Bank*, No. 1:18-cv-464-DRC-SKB (S.D. Ohio); *Hamm, et al. v. Sharp Electronics Corp.*, No. 5:19-cv-00488-JSM-PRK (M.D. Fla); *Clark v. Hills Bank & Tr. Co.*, No. LACV080753 (Iowa Dist. for Johnson Cty.); *Roy v. ESL Federal Credit Union*, No. 6:19-cv-06122-FPG-MJP (W.D.N.Y.); *Glass et al. v. Delta Community Credit Union*, No. 2019CV317322 (Super. Ct. of Fulton Cty., GA); *Marino, et al. v. Coach, Inc.*, No. 1:16-cv-01122-VEC (S.D.N.Y.); *Webb, et al. v. The City of Maplewood, Missouri*, No. 4:16-CV-1703-CDP (E.D.Mo.); *Clark v. Hills Bank and Trust Co.*, No. LACV080753 (Iowa District Court for Johnson County, Iowa). The Tabak litigation resulted in a $35 million settlement that has received final approval. The Jacobs litigation resulted in a $15,975,000 settlement that has received final

approval. The litigation against Uber Technologies, Inc. resulted in a $20 million settlement that has been finally approved. The litigation against UPS resulted in a $995,000 settlement that received final approval. The Lloyd litigation resulted in a $24.5 million settlement that received final approval. The Harris litigation resulted in a $15 million settlement that received final approval. The Lambert litigation resulted in a $16 million settlement that received final approval. The Hamm litigation resulted in a class settlement valued at up to $114 million by Plaintiffs' expert. The Roy litigation resulted in a $1.7 million class settlement that received final approval. The Glass litigation resulted in a class settlement valued at $2,825,502 that received final approval. The Marino litigation resulted in a class settlement including, inter alia, over $4.5 million of direct relief that received final approval.  The Webb litigation resulted in a $3.25 class settlement that received final approval. The Clark litigation resulted in a $740,000 class settlement that received final approval.

Ms. Gold currently serves as a member of the Plaintiffs' Leadership Committee (Co-Chairperson of Plaintiff Vetting and Discovery) in a very large data breach MDL involving over one hundred defendants currently pending in the District of Massachusetts. See *In re MOVEit Customer Data Security Breach Litigation*, Case No. 1:23-md-03083 (D. Mass.). Ms. Gold also currently serves as Chair of the Plaintiffs' Executive Committee in two large MDLs against some of the world's largest technology companies—Apple, Inc. and Google LLC—as well as a similar consolidated action against Facebook (now Meta, Inc.). See *In re Apple Inc. App Store Simulated Casino-Style Games Litigation*, No. 5:21-md-2985 (N.D. Cal.); *In re Google Play Store Simulated Casino-Style Games Litigation*, No. 5:21-md-3001 (N.D. Cal.); *In re Facebook Simulated Casino-Style Games Litigation*, No. 5:21-cv-2777 (N.D. Cal.).

**C.    Proposed Interim Class Counsel have and will continue to devote sufficient resources to this case.**

The resources Proposed Interim Class Counsel have already and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and each has committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the class.

D.    **Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel**

Plaintiffs' and their respective counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of all Plaintiffs, and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See Manual for Complex Litigation* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate

24

in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.* Nowhere could these sentiments be more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing. As mentioned above, if appointed, Proposed Interim Class Counsel will establish a protocol for regular time and expense reporting to monitor and manage the efficient prosecution of this action.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully asks the Court to grant this motion and enter an order: (1) consolidating the above-captioned cases and any future filed cases stemming from the Data Breach; (2) appointing Mona Amini of Kazerouni Law Group, APC,

Andrew J. Shamis of Shamis & Gentile, P.A. ("Shamis & Gentile"), Manuel S. Hiraldo of Hiraldo

P.A., Nicholas Migliaccio of Migliaccio & Rathod, LLP and Andrea R. Gold of Tycko & Zavareei

LLP to Plaintiffs Executive Committee; (3) appointing Mariya Weekes of Milberg, Coleman,

Bryson, Phillips, Grossman PLLC as Chair of Plaintiffs Executive Committee; (4) staying the

Related Actions, including any of the Defendant's responsive pleading deadlines, and setting a

deadline for the filing of a single CC as 30 days after the Court's order consolidating the cases

and appointing leadership; and (5) setting the deadline for Defendant's response(s) to the CC 45

days thereafter, and if the response(s) are a motion to dismiss, setting a deadline 30 days thereafter

for Plaintiffs' response, followed by 21 days thereafter for Defendant's reply(ies).

Respectfully submitted,

Dated: May 14, 2025

*/s/ Thomas A. Pacheco*
Thomas A. Pacheco (Bar No. 1712140091)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W Morgan Street
Raleigh, NC 27603
T: (212) 946-9305
tpacheco@milberg.com

Andrea R. Gold (Bar No. 18656)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Fax: (202) 973-0950
agold@tzlegal.com

Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD, LLP**
412 H Street, NE, Suite 302
Washington, DC  20002
Phone: 202-470-520
Fax: 202-800-2730
nmigliaccio@classlawdc.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2ND Floor
Coral Gables, FL 33134
Telephone: (786) 879-8200
mweekes@milberg.com

Mona Amini*
**KAZEROUNI LAW GROUP, APC**
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
mona@kazlg.com

*Pro Hac Vice forthcoming*

**Counsel for Plaintiffs and the Putative Class**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically filed the foregoing with the Court's

electronic filing system, which will send notice of such filing to all counsel of record.

*/s/ Thomas A. Pacheco*
Thomas A. Pacheco (Bar No. 1712140091)